**STATE OF LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary, U.S. Department of Health and Human Services, et al., Defendants.**

**Civ. A. No. 90–2231.**

United States District Court, District of Columbia.

April 2, 1991.

---

Charles A. Miller, Kelly Knivila, Covington & Burling, Washington, D.C., for plaintiff.

Anne L. Weismann, Margaret H. Plank, Dept. of Justice, Civ. Div., Washington, D.C., and Daniel Aibel, Office of the General Counsel, Dept. of Health and Human Services, Baltimore, Md., for defendants.

## MEMORANDUM AND OPINION

REVERCOMB, District Judge.

### I. BACKGROUND

Plaintiff, the Louisiana Department of Health and Hospitals, administers the State's Medical Assistance Program under the federal Medicaid Program, which is administered by the defendant United States Department of Health and Human Services (HHS). The Medicaid Program requires participating states to submit State Plans setting forth the types of medical assistance for which they will receive federal financial participation (FFP). Louisiana's State Plan, which was approved by HHS, includes pharmaceutical drugs and durable medical equipment as costs of medical assistance eligible for FFP.

Until 1986, purchases of prescription drugs and durable medical equipment in Louisiana were exempt from the State's sales tax. However, in 1986 the Louisiana legislature lifted the exemption for these items, and the State began to collect the tax on all purchases of prescription drugs and durable medical equipment, including those eligible for FFP under the Medicaid Program.

In applying for the FFP in relation to this medical assistance, the State included the amount of the sales tax applied to the items in the amount of reimbursement it sought. For the period from September 1987 through March 1989, the amount claimed which reflected sales tax paid on such medical assistance totalled $1,619,-239.00. The defendant Health Care Financing Administration (HCFA), which implements the Medicaid Program, disallowed the State's claim, stating that the Louisiana sales tax was not an expenditure for medical assistance under the Medicaid Act.

The State of Louisiana unsuccessfully challenged the disallowances before the Departmental Appeals Board before filing this suit. The Court now considers this case on cross motions for summary judgment. Because the parties are in general agreement as to the material facts underlying this case, the case is appropriate for summary disposition.

### II. DISCUSSION

The Medicaid Act broadly describes its reimbursement program in Section 1903(a)(1):

> the Secretary ... shall pay to each State which has a plan approved under this subchapter ... an amount equal to the Federal medical assistance percentage ... of the *total amount expended ... as medical assistance* under the State plan.

42 U.S.C. § 1396b (emphasis added). The Act defines "medical assistance" as including "payment of part or all of the cost of ... prescribed drugs, dentures, and prosthetic devices...." Section 1905(a), 42 U.S.C. § 1396d(a)(12).

Louisiana argues in this suit that its sales tax is an "expenditure for medical assistance" which is entitled to FFP because it is a "cost" of the prescription drugs and durable medical goods provided. Moreover, Louisiana asserts that the HCFA has a long-standing practice of reimbursing states for the amount of sales tax imposed on medical assistance under the Medicaid Program. In countering these arguments, the defendants claim that there is a distinction between the nature of the

Louisiana sales tax and that of the sales taxes for which the HCFA allows FFP. The distinction drawn by the defendants focuses on who is actually responsible for the tax imposed.

In Louisiana, the sales tax burden falls on the purchaser. A tax is added to each individual purchase, collected by the seller or provider of the taxable good, and then forwarded to the state. In this situation, the seller is a conduit through which the consumer-paid tax is collected by the state. In the Medicaid context, the consumer-tax would fall on the Medicaid recipient. However, in only a few cases does the Medicaid Act permit cost-sharing or other charges to be imposed upon Medicaid recipients by states. Section 1916, 42 U.S.C. § 1396o. The parties seem to agree that Louisiana cannot collect its sales tax from Medicaid recipients. Accordingly, the amounts claimed for reimbursement by Louisiana as a result of its sales tax were actually paid by the State into its own treasury on behalf of the Medicaid recipients.

Other states impose a sales tax on the providers of goods and services. This tax generally takes the form of a tax on gross receipts and is paid directly by the provider to the state. Although the burden of provider-paid taxes might ultimately be passed onto purchasers—i.e., in the form of higher prices—the providers are the parties legally responsible for paying the actual tax. If such taxes were not reimbursed by Medicaid, health care providers would be forced to pay sales taxes on services covered by Medicaid.

All of the plaintiff's arguments stem from its assertion that the distinction drawn between these two types of taxes by the HCFA is invalid. The State avers that the distinction contradicts the plain language of the statute, long-standing HCFA practice, recent Congressional enactments and the purposes underlying the Medicaid Program. The Court finds, however, that none of the plaintiff's arguments invalidate or even draw into question the defendants'

consistent and reasonable interpretation and implementation of the Medicaid Act.

### A. *Statutory Language*

The Medicaid Program reimburses participating states for expenditures made in providing medical assistance to Medicaid recipients. These expenditures represent the cost of medical assistance. The Medicaid Act, however, does not expressly address the issue raised in this case—whether a state sales tax constitutes a *cost* of medical assistance. Absent a clear statutory statement concerning the treatment of state sales taxes, the Secretary's interpretation of the term "expenditures for medical assistance" will not be disturbed by this Court unless it is arbitrary, capricious, or "manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). In this case, the plaintiff has pointed to no statutory language or other evidence of Congressional intent to include all state sales taxes among the "expenditures" subject to FFP under Medicaid.[1] Thus, the Court must consider whether the defendants' interpretation of the relevant statutory language is arbitrary or capricious.

### B. *Agency Interpretation and Practice*

Louisiana suggests that prior to the disallowances ordered in this case, the HCFA had a "long-standing policy of funding Medicaid agency payments for taxes that are of general applicability." Pl. Memorandum at 6. In support of this statement, the State cited a 1986 administrative decision from HHS acknowledging that for eighteen years the HCFA had reimbursed the state of Hawaii for amounts expended by providers in paying the state's excise tax. *Hawaii Department of Social Services and Housing,* DAB Decision No. 779 (Aug. 21, 1986). That case, however, involved only a

---

**1.** The plaintiff has cited certain recent enactments of Congress in support of its assertion that Congress intended Medicaid to reimburse states for recipient-paid sales taxes as well as

provider-paid taxes. However, as discussed later in this Opinion, the Court finds those enactments consistent with the defendants' pre-existing interpretation of the Medicaid statute.

provider-paid tax. The defendants may have a long-standing practice of providing FFP for provider-paid sales taxes, but Louisiana offers no evidence that that practice ever included payment of FFP for recipient-paid sales taxes. In fact, Louisiana appears to be the first state to seek federal Medicaid reimbursement for recipient-paid sales taxes.

In 1987, the HCFA amended its State Medicaid Manual to add a provision setting forth its practice concerning the reimbursement of sales taxes. The new provision, Section 2493, explained the distinction between provider-paid taxes and recipient-paid taxes:

> B. *Availability of FFP.*—
> 1. *Taxes of General Applicability.*— Where a tax is not restricted to medical providers or services and is applied to *all* types of businesses ... payment by the State to providers which recognized such a tax would be an allowable expenditure for FFP purposes.
>
> .     .     .     .     .
>
> 2. *Taxes Paid by Providers.*—When the tax is paid by the provider, the tax is allowable for FFP purposes (subject to B.1). However, where the tax is paid for by the Medicaid recipient, e.g., sales taxes paid by the patient, FFP will not be available.

Pl.Ex.C.

Louisiana characterizes this new provision as an attempt by the HCFA to change its long-standing policy of allowing FFP for recipient-paid sales taxes. Such a change, the State argues, could only be made pursuant to the notice and comment procedures of the Administrative Procedure Act (APA). Because no such procedures were followed in promulgating Section 2493, Louisiana claims that both the section and its application to Louisiana's claims for FFP are invalid.

For the reasons stated above, the Court has rejected Louisiana's assertion that the HCFA had a long-standing policy of reimbursing recipient-paid taxes. Rather, it appears that the HCFA's long-standing practice concerning taxes was to pay those imposed on providers. The new Section 2493 restates this practice and is entirely consistent with the HCFA's interpretation of what constitute "expenditures for medical assistance." Accordingly, the Court finds that the Section can best be described under administrative law analysis as an "interpretative" rule which is not subject to notice and comment requirements of the APA.[2] Moreover, for reasons discussed later in this Opinion, the Court finds the HCFA's distinction between recipient-paid and provider-paid taxes reasonable and consistent with the purposes underlying the Medicaid Act.

### C. *Recent Congressional Enactments*

In its pleadings, the plaintiff discusses two recent Congressional enactments which it claims evince Congress' intent that both provider-paid and recipient-paid sales taxes should be eligible for FFP. The first, which was part of the Technical and Miscellaneous Revenue Act of 1988, states:

> The Secretary of Health and Human Services shall not issue any final regulation prior to May 1, 1989, changing the treatment of voluntary contributions or *provider-paid taxes* utilized by States to receive Federal matching funds under title XIX of the Social Security Act.

Pub.L. No. 100–647, § 8431, 102 Stat. 3342, 3804 (1988) (emphasis added). Congress enacted this moratorium, which was subsequently extended, in response to some states' practice of using revenues generated from provider taxes to draw federal matching funds. Pl. Memorandum at 24.

Louisiana asserts that this moratorium applies to its recipient-paid sales tax and, therefore, precludes the HCFA's application of Section 2493 to disallow FFP for those tax amounts. This argument assumes that the Louisiana sales tax is "provider-paid" within the meaning of the mor-

---

**2.** The United States Court of Appeals for the District of Columbia, in a case cited by the plaintiff, has acknowledged that an administrative rule which "simply restate[s] the consistent practice of the agency" is an interpretative rule. *General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1565 (1984), *cert. denied,* 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985).

atorium and that the HCFA's promulgation of Section 2493 of the State Medicaid Manual constituted a change in the treatment of provider-paid taxes. Both assumptions fail. First, the State, throughout its various arguments, minimizes the distinction between provider-paid taxes and recipient-paid taxes, asserting that there is no effective difference between the two types of taxes. However, a very significant difference exists between the two taxes when viewed in terms of the purposes and structure of the Medicaid Program, as will be discussed more fully in the next section. Moreover, as reflected in the language of Section 2493, which was promulgated a year before the moratorium, the HCFA had announced its policy of providing FFP for provider-paid taxes only and not taxes paid by Medicaid recipients. Therefore, when Congress specifies "provider-paid" taxes in the moratorium, it is reasonable to assume that recipient-paid taxes were not intended to be included in the provision. Read in light of the agency's interpretation and implementation of the Medicaid Act, the moratorium is consistent with the distinction drawn by the HCFA between the different types of sales taxes and does not preclude the disallowances in this case.

The second legislative act discussed in Louisiana's pleadings is the new Section 1902(t) of the Medicaid Act, enacted as part of the Omnibus Budget Reconciliation Act of 1990, which states:

> Except as provided in section 1903(i), nothing in this title (including section 1903(a) and 1905(a)) shall be construed as authorizing the Secretary to deny or limit payments to a State for expenditures for medical assistance for items or services, attributable to taxes (whether or not of general applicability) *imposed with respect to the provision of such items or services.*

Pub.L. No. 101–508, § 4701 (1990) (emphasis added). The plaintiff argues that this legislation "definitively answered" the issue presented in this suit in Louisiana's favor. The Court finds, however, that the emphasized language in the provision clearly supports the defendants' consistent assertion that Medicaid only reimburses states for provider-paid taxes. Thus, both Congressional enactments highlighted by the plaintiff in support of its claims actually confirm the defendants' position on the issue raised in this case.

D. *Purposes of the Medicaid Act*

Finally, the plaintiff argues that the defendants' practice of distinguishing between provider-paid taxes and recipient-paid taxes favors health care providers over benefit recipients and, therefore, contradicts the primary purpose of the Medicaid Act. Clearly Congress intended health care recipients and not providers of health care as the beneficiaries of the Medicaid Program; this intent, however, is not violated by the defendants' position in this case.

As discussed earlier, although the Louisiana sales tax is a recipient-paid tax, the State itself must pay the sales tax for Medicaid recipients. Thus, as applied to Medicaid recipients, the tax is not really a recipient-paid tax, but a State-paid tax. When considered in this light, if the HCFA's distinction draws priorities at all, the effect of the distinction is to favor health care providers over the State.

The HCFA acknowledges this effect but asserts that it is entirely consistent with the general structure of the Medicaid Program. Generally speaking, Medicaid reimburses providers of health care for the costs of providing medical assistance to Medicaid recipients. In implementing the Medicaid Program, the HCFA has interpreted provider-paid sales taxes to be "costs of medical assistance" but has not similarly interpreted recipient-paid taxes. This interpretation is based on the HCFA's view that a recipient-paid tax is not a *cost* of providing medical assistance. In addition, when Louisiana pays such taxes to itself on behalf of Medicaid recipients, the HCFA does not consider the payment an "amount expended ... as medical assistance." *See* Medicaid Act Section 1905(a), 42 U.S.C. § 1396d(a).

Louisiana contests this interpretation. Louisiana argues that although the tax is paid by the State into its own treasury, the

money paid is coming out of the State's medical assistance fund and, thus, represents a cost of medical assistance. The State explains:

> Clearly, whenever the state pays the cost of medical services, including any taxes involved, and the federal government participates in the payment, the state to that extent is benefitted. But that is true any time the state makes a payment into the Medicaid program. The purpose of federal reimbursement is to encourage states to make such payments, and thereby to aid the needy. Whenever a federal policy denies reimbursement to a state, to that extent it discourages the state from making the expenditure, and thus it potentially reduces assistance available to the needy.

Pl. Memorandum at 16–17. In the footnote to this argument, Louisiana explains that when its Medicaid agency expends funds to the State treasury to pay recipient-paid sales taxes, the funds available for medical assistance are reduced. If the defendants would allow FFP for these amounts, the state Medicaid agency would have more money available to spend on medical assistance, "the precise purpose of federal financial support." *Id.* at 17, n. 8.

Despite the State's appeal to the beneficent purposes of the Medicaid Program, the bottom line of the plaintiff's position is unavoidable. The State is arguing that the federal government must replace funds in the State's medical assistance fund which were removed by the State in order to increase the State's general treasury. The Court agrees with the defendants that "FFP in this case would represent no more than an increase in the federal share of the state's Medicaid fund, with no corresponding increase in benefits to recipients." Defs. Opposition at 6. Here, the State chose to impose a tax on items which, when purchased by Medicaid recipients, would have to be paid by the State. The State now seeks to shift the burden of that tax to the federal government. This action cannot be justified by the purposes of the Medicaid Program.

The plaintiff has not demonstrated that the agency's position in this case is arbitrary, capricious or contrary to the Medicaid Act. In a case such as this, where the federal agency has interpreted the program it administers in a manner consistent with the statutory purpose and design of the program, the Court will not upset the agency's interpretation.

### III. CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment is GRANTED in full and the plaintiff's Motion for Summary Judgment is DENIED.